# THE UNITED RAILWAYS AND ELECTRIC CO. *vs.* MARY S. WOODBRIDGE.

*Negligence—Passenger Injured While Alighting From Street Car Which Had Stopped Near a Crossing and Then Moved On—Construction of Warning Posted in Car—When Conductor Should Have Seen Passenger's Danger.*

Plaintiff's evidence in this case showed that she was a passenger on defendant's electric street railway and that upon paying her fare she asked for a transfer to Edmondson avenue at Franklin street; that when the car approached that street, the conductor called out "Franklin street, transfer to Edmondson avenue," and the car stopped; that she began to get off but while still holding to the handle-bar with her right hand the car started again and she was thrown upon her back and injured. The defendant's evidence was that a wagon was on the track in front of the car as it approached Franklin street, which caused the car to proceed slowly and to stop and then to move on, and that the plaintiff got off the car when it was about sixty feet from the crossing which was the customary stopping place; also that the conductor was on the front part of the footboard collecting fares when plaintiff alighted and did not see her until his attention was called by other passengers when, upon looking, he saw her in the act of falling. A warning posted in the car set forth that, "cars stop to take on and let off passengers at near side of cross streets. Those violating this notice do so at their own risk." *Held,*

1st. That the notice posted in the car does not mean that passengers are allowed to get off the cars *only* at the near side of cross streets, and cannot be construed so as to make a passenger guilty of contributory negligence merely because he gets off a car while it is stopping elsewhere.

2nd. That the act of the conductor in calling out the name of the transfer point together with the fact that the car then stopped near the crossing, justified the plaintiff in believing that it was proper for her then to alight, and that therefore there was legally sufficient evidence of defendant's negligence to go to the jury, and there was no such contributory negligence of the plaintiff as precludes her recovery.

*Held,* further, that the evidence is legally sufficient to show that by the exercise of reasonable care the conductor could have seen plaintiff's position of peril in time to avoid the injury, and since he had announced the transfer point and the car had stopped, he should have observed and checked plaintiff's attempt to leave the car when it was about to move up nearer to the crossing.

Appeal from the Baltimore City Court (DENNIS, J.)

*Plaintiff's 5th Prayer.*—If the jury should find from the evidence that the car on which the plaintiff was a passenger came to a stop before it reached the corner of Howard and Franklin streets and that the plaintiff may not have used the care of a reasonable and prudent person in attempting to get off the car, yet if the defendant's agents and servants in charge of said car might have seen the position of the plaintiff by using ordinary prudence and care and might have avoided the injury, the plaintiff is entitled to recover. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*John C. Tolson* (with whom was *Olin Bryan* on the brief), for the appellant.

*Forrest Bramble* (with whom was *Wm. G. Towers* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

This action was brought by Mary S. Woodbridge in the Baltimore City Court against the United Railways and Electric Company to recover for personal injuries sustained while a passenger upon a car of the defendant company. The declaration charges that the plaintiff paid her fare and thereby became a passenger on the car of the defendant which was a common carrier of passengers for hire; that when said car reached a point where plaintiff desired to leave the car, it was stopped to allow her and others to alight therefrom; that by reason of the negligence of the defendant when plaintiff was alighting, with her feet on the steps of the car, and in the act of stepping down into the street, the car was prematurely started, whereby she was thrown down in the street and injured. The case was tried before a jury under instructions from the Court, and a verdict was given for the plaintiff for $500. The only exception was to the ruling on the prayers.

The plaintiff testified that with her son-in-law, Joseph Susco, she boarded the car on Pratt street, near Light, that they paid their fares, and asked and received transfers to the Edmondson avenue line, the transfer point being at the intersection of Howard and Franklin streets; that as the car was going up Howard street, when it got to Franklin it stopped, and the conductor called out, "Franklin street, transfer to Edmondson avenue;" that her son-in-law got off and she got right up and started off right behind him; that as she was in the act of stepping down on the ground with the handle-bar in her right hand, the car started and she was thrown flat on her back. She subsequently said the car was not up to the corner of Howard and Franklin streets, when she fell and that she guessed it was about 50 or 60 feet off.   Joseph Susco testified that he paid the fares and asked for transfers to Edmondson avenue line; that he was not well acquainted with the city, and did not know where he was, but when the conductor "hollered" to transfer to Edmondson avenue, the car came to a stop, and he got off; that the plaintiff got off right behind him, but "kind of hung on the car," and the car started before she was on the ground.   There was full proof of the plaintiff's injuries, offered by her.

John B. Falk, for defendant, testified that he was a passenger on the car and saw the accident; that the car was going slow, following a wagon, and that when about 60 or 70 feet from Franklin street, a man got off, and a woman followed him and fell in the street; that the conductor was then forward on the footboard collecting fares; that the passengers called his attention to the plaintiff falling off, and he stopped the car and went back to see if she was hurt, and that the car had only moved up five or seven feet.

William Urban, the conductor, testified that he was in front collecting fares; that the car was going very slow, following a wagon; that as soon as the wagon got out of the way the car started up, and somebody shouted to him that some one had fallen off, when he looked around, saw plaintiff falling, and stopped the car.

Clarence Ryan, the motorman, testified substantially as Urban did as to the movements of the car.

William A. Decource, a passenger, testified that the car was going very slow, "kept inching up, and stopping (not quite); it had not exactly come to a stop, but it would make a lurch and catch up to the wagon and then lurch back," that he saw her rise as if to get off, and he said "the car aint stopped yet," and she took her seat; that when the car was about 100 feet from Franklin street, she jumped up and tumbled out of the car; that he did not see anyone with her or get off just before her, but he saw "several parties making a dive to get off." Dr. Trimble testified that he examined plaintiff and could discover no evidence of any injury, and Dr. Preston testified that he had examined her and did not think she was suffering from *locomotor ataxia*. There were no other witnesses, but the following notice was admitted to have been posted in the car.

### Warning.

No one is permitted to ride on the steps or platform, or get on or off when the car is in motion. Persons are warned of the danger. Cars stop to take on and let off passengers at near side of cross streets. Those violating this notice do so at their own risk. No officer or agent of the company has the authority to waive these regulations. Smoking is permitted on the three rear seats.

WM. A. HOUSE, General Manager.

The plaintiff offered six prayers all of which were granted, and the defendant offered four, all of which were granted except the first, which asked an instruction that there was no evidence in the case legally sufficient to entitle the plaintiff to recover, and to the rejection of this prayer, and the granting of each of the plaintiff's prayers, the defendant excepted. This rejected prayer will be first considered.

The testimony of the plaintiff, which we have recited, goes to show that being a passenger on defendant's car, and desiring to transfer to Edmondson avenue, notice was given by the conductor to change for that line, and the car was stopped, apparently to enable her and others to do so, and that while

attempting to alight, the car was started and she was injured as alleged in the declaration.   In the recent very similar case of *United Railways* v. *Beidelman*, 95 Md. 483, this Court said, "That this was evidence going to prove the allegations of the *narr*, in respect to the negligence of the defendant, needs no argument or authority to establish.   Proof of the occurrence of an accident and injury to a passenger is *prima facie* evidence of negligence in the carrier, and throws upon him the *onus* of rebutting the presumption by proving there was no negligence on his part.   *Pittsburg & Conn. R. R.* v. *Andrews*, 39 Md. 353; *Phil., Wil. & Balt. R. R.* v. *Anderson*, 72 Md. 519.   The proof adverted to, taken by itself, making a *prima facie* case of negligence against the defendant, it only remains to inquire what appeared in the other facts of the case to rebut, excuse, or relieve the defendant from the consequences of such negligence, and whether if anything, this was properly submitted to the trying tribunal."   In the light of this emphatic language, which we find applicable to the facts of the present case, there can be no doubt that this prayer was properly rejected.

All the plaintiff's prayers are objected to on the ground that the plaintiff disregarded the warning posted in the cars that they stopped to take on and let off passengers at near side cross streets, and that as the car had not actually reached the near side of Franklin street the plaintiff in getting off before reaching that point, even if the car had stopped, was guilty of such contributory negligence as to preclude recovery; and the fifth prayer was further objected to on the ground that there was no evidence to support the hypothesis that " the defendant's servants and agents might have seen the position of the plaintiff by using ordinary prudence and care, and might have avoided the injury."

As to the last objection, it is sufficient to say that the record does not disclose any special exception on this ground.  *Albert* v. *The State*, 66 Md. 334.   The plaintiff's 1st, 2nd and 3rd prayers have been so often approved that they cannot be questioned in this case, unless there was such contributory negli-

gence as required the case to be taken from the jury *on that ground.* In view of the assertion of such negligence now, in the argument on the granted prayers, it appears singular that a prayer was not offered by the defendant withdrawing the case from the jury on that distinct ground. But we are to deal with the case as presented by the record. The fourth prayer instructed the jury that if they found the plaintiff's fare was paid and a transfer was given her for Edmonson avenue ; that as the car approached the transfer point the conductor called out, "Franklin street, transfer to Edmondson avenue," and the car came to a stop ; and that while the car was standing still, and plaintiff was alighting and using ordinary care, the car was prematurely started, whereby the plaintiff was thrown to the ground and injured, then she was entitled to recover. This instruction does not require the jury to find that the car had reached the near side of Franklin street at which point *alone* the defendant contends, under the regulation of the company posted in the cars, the plaintiff had a right to get off ; so that the question involved is, first, whether such is the true construction of the rule, and second, whether the conduct of the defendant's agent, notwithstanding such construction, did not lead her to believe that she had reached the place of transfer, and that she was directed or invited to leave the car when the car stopped as stated in the prayer. The defendant's contention is that the regulation means that cars will stop *only* at the near side of crossings to take on or let off passengers, and that anyone getting on or off at *any other place*, and *under any circumstances*, is precluded from recovery, if injured by reason of the negligence of the company. But we cannot agree that such an inflexible and inexorable rule, fraught with such far reaching consequences, can be properly deduced from the language employed. It is doubtless true that they can be *required* to stop for such purpose, *only* at such places, and it is an entirely reasonable rule that a *passenger* should not have the right to stop a car in the middle of the block nor at the far side of a crossing, but the passenger's rights are not necessarily controlled by that regulation

under all circumstances when the car does actually stop else-
where.   The first and obvious reply to the defendant's con-
tention is, that if this was meant to be the rule, the word *only*
should have been inserted, or what would have been clearer
still, to say, "passengers will be received and discharged *only*
when the car stops at the near side of crossings."    Whether
even that language would afford protection to the company
against its own negligence, in all cases, and under any cir-
cumstances, is a question we are not required to consider.
But further, as was said in *Cason's case,* 72 Md. 381, citing
with approval *Siner* v. *Great Western R. W.,* L. R. 4 Exch.
123, " Judges cannot denude themselves of the knowledge of
the incidents of railway travelling which is common to us all."
We know that the street railways of large cities are used not
only by their inhabitants who may be presumed to be familiar
with their habits and customs, as well as with most of their
established rules and regulations, but they are used daily by
thousands of strangers who have no knowledge of either.
We know that in some cities the rule is to stop at the far side
of the crossing, while in others, as in Baltimore, the stop is
made on the near side, and it is equally important for the con-
venience and safety of those using the cars, as well as of
pedestrians using the street crossings, to know what is the
rule in this regard.    We think therefore it is plain that the
primary and principal purpose of this notice posted in the car
is to inform the travelling public at which side of the crossing
the car will stop, and not to establish an inflexible rule that no
one will be received or discharged elsewhere ; by virtue of
which rule the Courts can be called on to declare any attempt
to get on or off elsewhere to be negligence *per se,* precluding
recovery.    If such contention is to prevail, then when a car
is blocked by a coal cart making delivery, or delayed by rea-
son of an accident, or any other cause, at any other point than
directly at the near side of a crossing, a passenger who should
attempt to leave a car while standing still, no matter how care-
ful in other respects, and no matter what the necessity for
leaving, would have no remedy for the grossest negligence of

the company, since there can be, and should be, no compari-
son of the negligence of the parties.   We cannot adopt an
inflexible rule leading to such consequences.   In *Cason's case*,
*supra*, it was said, there is an obligation imposed upon the
passenger to observe the reasonable regulations of the com-
pany in entering, occupying, and leaving the car, and if a
party be injured in consequence of a known violation of such
regulations, unless compelled thereto by some existing neces-
sity beyond his control, the company is not responsible.  Thus
in *Wilkinson's case*, 30 Md. 224, the violation of the rule was
in *entering* the car by the front platform ; and in *Foreman's
case*, 94 Md. 226, the plaintiff was standing on the platform
while the car was in motion, thus occupying by his own choice
a position forbidden by the rule of the company, and unsafe
in itself, and the facts were the same in Cason's case except
that there the plaintiff stood on the front platform, while in
Wilkinson's case he stood on the rear platform.    In all those
cases the negligence was shown by an act so prominent and
decisive that there was no room for ordinary minds to differ
as to its effect and character.

In *Maugan's case*, 61 Md. 61, it was said :   "Accidents oc-
cur and injuries are inflicted under an almost infinite variety of
circumstances, and it is quite impossible for the Courts to fix
the standard of duty and conduct by a general and inflexible
rule applicable to all cases, so that a departure from it can be
pronounced negligence in law.    The rule that requires a party
before he crosses a railroad track to stop, look, and listen for
approaching trains, which has been generally adopted by the
Courts, is the only one that approaches universality of appli-
cation to a particular class of accidents.    But there is no such
general accord of judicial opinion and precedent in reference
to attempts to leave a car while it is in motion.    The cases
cited on the briefs of counsel on both sides show very clearly
that the weight of authority is against the proposition that it
is *always*, as matter of law, negligence and want of oi dinary care
for a person to attempt to get off from a car when it is in
motion."   This was the language of JUDGE MILLER in an

opinion affirming a ruling of the lower Court refusing to take
the case from the jury where the defendant was negligent in
not giving reasonable time to the passengers to alight, but
where it was claimed the plaintiff was negligent in attempting
to alight after the train had started and while encumbered with
a valise in one hand and a basket in the other, and we think
the language is directly and strikingly applicable to the facts
of the present case.

It must be remembered that upon the hypothesis of this
prayer, which is abundantly supported by evidence, the car
was "nearing" the crossing, that it had actually come to a
stop, and that it is not denied that the conductor had called,
"Franklin street, transfer to Edmondson avenue." The car
was an open summer car, which from common knowledge
may be said to be from 35 to 45 feet in length over all, and
we know that the cars rarely run directly up to the crossing
before stopping, so that the rear of this car towards which
the plaintiff was sitting may be assumed to be about 50 feet
from the crossing at its usual stopping place, and in this case
the highest estimate of the distance was 100 feet. Under
these circumstances then, was it unreasonable for her to con-
clude that the car had stopped for the purpose of the trans-
fer, and that the call of the conductor was a direction to her
to get off then and there ? We think not. In *Anderson's
case*, 72 Md. 528, where the facts were very similar, except
that the road was a steam railroad, and that the plaintiff got
off on the left, or wrong, side of the train, the Court said :
"It is difficult to see why after the speed was slackened, the
name of the station was called out and the train stopped, un-
less it was intended that the passengers for that station should
alight. *The passenger who should draw this conclusion, cannot
be considered as forming an opinion which no reasonable man
could entertain.* The evidence does not inform us why the
name was called out; and why the train was stopped, unless
this was the purpose, nor does it show why, after a momen-
tary pause, it afterwards slowly proceeded. If the discovery
of the approaching train caused any change of purpose on

the part of the conductor, it would have been reasonable to communicate this change to passengers whose safety might be affected by it. *If any reason had been made known to the plaintiff for the stopping of the train and the announcement of the name of the station*, we would have had more light on the nature and character of his act. But without some aid of this kind we are unable to say that the inference of negligence on his part is certain and uncontrovertible, and consequently we cannot declare it as a question of law." Here, we are now informed from the evidence that the car was stopped because of the wagon in front of it, and that it moved on after the wagon had started up, but we are not informed why the direction to transfer was given when it was, and no communication of any kind was given to passengers to countermand or delay the transfer which had been directed. We find no material difference between that case and the present, and we cannot therefore declare the plaintiff negligent in law. The reasoning of *Maugan's case* and *Anderson's case* is supported by the leading case of *Bridges* v. *North London Railway Company*, in the House of Lords, 7 Eng. and Irish Appeals, 213, in which a number of elaborate and instructive concurring opinions were delivered by the Lords and Justices, but it is unnecessary to protract this opinion by any citation from them.

The form of the plaintiff's fifth prayer is in accord with the principles laid down in *Armstrong's case*, 92 Md. 564, and we think there was testimony tending to place the defendant's agent in a situation affording him an opportunity to discover the plaintiff's peril by the exercise of reasonable care, in time to avert it.

The conductor had announced the transfer, and if after this announcement, the car stopped, before it was safe to attempt to transfer, his attention should have been attracted thereby, and he should have suspended the collection of fares in which he was engaged on the forward part of the footboard on the same side, and should have warned passengers to keep their seats till further direction was given. The plaintiff's son-in-law had gotten off before her. Other passengers saw him

get off, and saw her attempting it, and called to the conductor in time for him to see her falling, and we can perceive no reason why he could not have seen her in time to check her attempt, if his attention had been given where, under the existing circumstances it was needed. The duties of a conductor upon rapid transit cars are numerous and exacting, and it should be said to their credit that they are generally discharged with commendable care and skill, but the safety of the public demands that carriers be held to the rule requiring them to exercise the highest degree of care and diligence practicable under the circumstances.

We think the whole law of the case was fully and fairly put before the jury by the prayers granted by the learned Judge, in whose rulings we can discover no error.

> *Judgment affirmed with costs above and below.*

(Decided July 1st, 1903.)