# GEORGIANNA TOPP vs. THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Negligence—Invitation to Passenger to Alight at Dangerous Place on Electric Railway's Private Right of Way—Contributory Negligence.*

When a suburban electric railway runs upon its own private right of way it is bound to exercise the highest care in providing passengers with safe premises upon which to alight from the cars.

Plaintiff was a passenger on defendant's open car which had a footboard on the side from which it was necessary to alight. The car ran for some distance on defendant company's private right of way in the rear of certain cottages, and the defendant had there erected or adopted a number of platforms along side of the tracks at which it was customary to stop to let off passengers. Plaintiff notified the conductor of her car that she wished to get off at a certain platform. The car did not stop there, but stopped at a point further on, where there was no platform, when the conductor looked directly at plaintiff as she was standing up in the car, and when she stepped upon the running board to descend. The ground at that point was covered with high grass and weeds and appeared to be safe, but in the act of getting off and while plaintiff was holding to the handle bar with her left hand, her foot failed to reach the ground, and she fell down a declivity concealed by the weeds and grass, breaking her grasp of the bar, and she sustained the injuries to recover for which this action was brought. The declivity at this point was over six feet and abrupt and the track was more than four feet above the base of the slope. *Held*, that there was *prima facie* evidence of negligence on the part of the defendant in the invitation to the plaintiff to alight at a place on defendant's own premises which was not safe, and that therefore there was error in directing a verdict for the defendant on the ground that there was no evidence of its negligence.

*Held*, further, that the plaintiff was not guilty of contributory negligence as matter of law in getting off the car at a place where she was invited to get off, although not a customary stopping place, since the dangerous character of the ground there was not obvious, and the question whether she saw, or with ordinary care should have seen, that she must step upon a steep declivity beyond the reach of her foot is a matter for the jury.

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Thomas G. Hayes* and *J. Milton Lyell*, for the appellant.

1. 'A passenger on a street railway remains such when alighting on and leaving the private premises of the carrier, and the decree of care due from the street railway to such alighting or leaving passenger is of the highest degree, and the strictest vigilance is required of the carrier to provide a safe landing and leaving place.     5 *Am. & Eng. Ency. of Law*, 498, 558; *Hartzig* v. *Lehigh V. R. Co.*, 154 Pa. St. 364; *B. & O. R. Co.* v. *Hauer*, 60 Md. 449; *B. & O. R. Co.* v. *Leapley*, 65 Md. 571; *P., W. & B. R. Co.* v. *Anderson*, 72 Md. 519; *B. & P. R. Co.* v. *Jean*, (Md.); *Wash. & Geo. R. Co.* v. *Harman*, 147 U. S. 571; *Cartright* v. *Chicago R. Co.*, 52 Mich. 606; *Wharton on Negligence*, sec. 647.

2. The street railway was negligent as a matter of law in not stopping its car, as twice requested by the passenger at the platform on its private premises, and in carrying the passenger beyond the platform, and impliedly inviting her by its conductor to alight on an unusual and unsafe landing place on its own premises without assistance and warning. *Creamer* v. *Railway Co.*, 156 Mass. 320; 5 *Am. & Eng. Ency. of Law*, 574; *Memphis R. Co.* v. *Whitefield*, 44 Miss. 466; *Cartright* v. *Chicago R. Co.*, 52 Mich. 606; *Foy* v. *London R. Co.*, 18 C. B. N. S. 225; *Cincinnati R. Co.* v. *Richardson*, 14 Ky. Law Rep. 367; *Richmond City R. Co.* v. *Scott*, 86 Va. 902; *Joslyn* v. *Milford St. R. Co.*, 67 N. E. Rep. 866; *Southern Pacific R. Co.* v. *Hall*, 41 C. C. A. 50; *Henry* v. *Grant St. Electric R. Co.*, 24 Wash. 246; *Nellis on Street Railway Accident Law*, 102.

3. A passenger impliedly invited to alight at an unusual place on the premises of the street railway may assume the place is safe, and unless the danger is obvious and apparent, the passenger is not guilty as a matter of law of contributory negligence. *Cartright* v. *Chicago R. Co.*, 52 Mich. 606; 5 *Am. & Eng. Ency. of Law*, 648, 652, 662; 7 *Am. & Eng. Ency. of Law*, 391; *B & P. R. Co.* v. *Jean*, 98 Md. 546; *B. & O.*

*R. Co.* v. *Hauer*, 60 Md. 449; *Minsing* v. *Michigan C. R. Co.*, 76 N. W. Rep. 98; *Joslyn* v. *Milford St. R. Co.*, 67 N. E. Rep. 866; *Richmond City R. Co.* v. *Scott*, 86 Va. 902; *McGee v. Missouri Pac. R. Co.*, 92 Mo. 208; *Fillingham* v. *St. Louis Transit Co.*, 77 S. W. Rep. 314; *Henry* v. *Grant Street E. R. Co.*, 24 Wash. 246; *Bass* v. *Concord Street R. Co.* (N. H.), 46 Atl. Rep. 1056; *Finders* v. *N. J. Street R. Co.*, 67 N. J. Law, 76.

*Reuben C. Foster* (with whom were *F. C. Slingluff, Geo. Dobbin Penniman* and *A. D. Foster* on the brief), for the appellee.

There is no evidence to show that if the platform had not been constructed it would not be perfectly proper to stop the car on the embankment for passengers who wished to visit the cottages. The construction of the platform made alighting from the car a little more convenient, but it did not render dangerous the stopping of the car at other places on the embankment when that stopping had *not* been dangerous before the platform was built. *Bigelow* v. *West End Ry. Co.*, 161 Mass. 393.

Unless the failure of the motorman to stop the car exactly opposite the platform was the direct and proximate cause of the injury, the company is not responsible for the accident. For instance, it was held in a St. Louis case (*Haley* v. *St. Louis Trans. Co.*, 64 L. R. A. 295): "Failure to stop a street car at the destination of a passenger, by reason of which he is carried to the next street is not the proximate cause of his falling on a slippery pavement in attempting to return to the point where he should have been permitted to leave the car."

The accident was the direct result of the appellant's own negligence in undertaking to alight from the car in the manner she did. When the car ran past the platform and came to a stop, she had the right to decline to leave the car at that point, if it was dangerous for her to do so, and knowing that it had stopped at the embankment, she was bound to exercise proper care in stepping off.

The place where the car stopped was the company's right

of way, with no room for carriages, and the slightest care would have enabled the plaintiff to see that the embankment was narrow, and that its edge should be carefully located before it would be safe to step off the car.    It was in broad daylight, the plaintiff was thoroughly familiar with the locality, there was nothing to prevent her seeing and knowing the character of the place at which she undertook to alight from the car; there is no question that the car was standing perfectly still; nevertheless, she elected to leave the car at that place. Her actions were deliberate; there is no evidence that she was flustered or nervous, and she had good eyesight.    If the place was dangerous she should have declined to alight there, or knowing the conditions, she should have so stepped off that her left foot would have found a safe foothold beside her right foot.    Can it be argued in the face of these conditious that she is not to be charged with full knowledge of all the existing circumstances, and responsible for the result of her own act?    *Lewis* v. *B. & O. R. R. Co.*, 38 Md. 599; *Steever's case*, 72 Md. 159; *Piper* v. *Cambria Iron Co.*, 78 Md. 249; *Balto. Traction Co.* v. *Helms*, 84 Md. 515; *Meister* v. *Alber*, 85 Md. 72; *McNab* v. *United Rys. Co.*, 94 Md. 719; *Bigelow* v. *West End St. Ry. Co.*, 161 Mass. 393, *Eckerd* v. *C. & N. W. Ry. Co.*, 70 Iowa, 353; *Haley* v. *St. Louis Traction Co.*, 64 L. R. A. 295.

Conceding for the sake of the argument, that those in charge of the car were negligent in failing to stop the car opposite the platform, still that is not sufficient to make the appellee liable for the accident, for that was not the last negligent act, and the negligence of the appellant in leaving a place of safety, if it was a dangerous place to alight or knowing the width of the embankment, her failure to safely place her left foot upon the ground, immediately contributed to the infliction of the injury which she sustained, and that contributory negligence is a bar to recovery on her part.    *P., W. & B. R. R. Co.* v. *Hogeland*, 66 Md. 149; *Dyrenfurth* v. *B. & O. R. R. Co.*, 73 Md. 374; *Meister* v. *Alber*, 85 Md. 72; *Phila. & B. C. R. Co.* v. *Holden*, 93 Md. 417; *McNab* v. *United Rys. Co.*, 94 Md. 719; *Eckerd* v. *C. & N. W. Ry. Co.*, 70 Iowa, 353.

PEARCE, J., delivered the opinion of the Court.

This suit was brought by the appellant to recover for personal injuries sustained by her while a passenger upon a car of the appellee. The only testimony in the case was her own and that of her son.

She testified that when she entered the car she gave her transfer ticket to the conductor, and told him she wished to leave the car at the platform in the rear of the fourth cottage on Chelsea Terrace, where her son and his wife lived; that the defendant company owned and used a private road or way for its tracks and cars running from Clifton avenue to the Windsor Mills road in the rear of the cottages on Chelsea Terrace, and that when the car was about to turn into this way, the conductor asked her at which cottage she wished to alight, and she replied at the fourth; that as the car approached the platform used by passengers for that cottage, she rose and stood until the car stopped, but it did not stop at that platform, nor until it had passed a second platform used by passengers for other cottages farther up the Terrace, and stopped at a point where there was no platform; that the conductor was not paying attention when the car approached the first platform and did not ring the bell to stop until the car had passed both platforms; that the car was a summer car with a footboard on the side and was standing perfectly still when she attempted to alight; that she had never been carried beyond the first platform before, though she had frequently alighted there, and that she did not know the ground beyond the platform, but that the conductor was looking directly at her when he rang the bell to stop, and when she stepped on the running board to alight, and gave her no warning not to do so; that the ground where the car stopped was covered with tall weeds and grass and looked perfectly safe to alight from the car, but when she stepped down from the running board while holding on to the car handle with her left hand, her foot could not reach the ground, and she was thrown violently down a declivity concealed by the grass and weeds, wrenching and spraining her wrist, and bruising her body

badly.    This was on July 22nd, and she was confined to the
house until August 25th, and continues to suffer so much with
her hand that she is unable to attend to her household duties.

Her son testified that there are eleven cottages on Chelsea
Terrace in the rear of which the cars run upon the defend-
ant's private property; that there was a platform in rear of the
fourth cottage, in which he lived, and another platform in rear
of the sixth cottage, each with five steps down to the ground;
that he did not know by whom these platforms were provided,
but that all conductors and passengers on these cars rec-
ognized them as platforms for receiving and discharging pas-
sengers from and to these cottages; that he went with his
mother the same afternoon to the place where she said she
fell, and subsequently measured the slope of the declivity and
the perpendicular height of the track above the base of the
declivity.    The slope was over six feet and abrupt, and the
track was four feet eight inches above the base of the
slope; that the appearance of the place was very deceptive,
being covered with a dense growth of weeds and long grass
so that it was impossible for any one not familiar with the
ground to perceive any danger in stepping from the car.

At the close of the plaintiff's testimony the Court granted
the following prayers offered by the defendant:

1st.    The defendant prays the Court to instruct the jury
that there is no evidence in this cause legally sufficient to en-
title the plaintiff to recover and their verdict must be for the
defendant.

2nd.    The Court instructs the jury that from the uncontra-
dicted evidence in this case, the plaintiff was guilty of negli-
gence directly contributing to the accident complained of, and
therefore, their verdict must be for defendant.

A verdict for defendant was accordingly rendered, and judg-
ment was entered upon the verdict.    The only exception was
to the ruling on these prayers.

Upon the question of the defendant's negligence, the argu-
ment of the appellee was based chiefly upon the contention
that a street railway is not liable, as a carrier, to the passen-

ger for the condition of the street upon which he alights. This is undoubtedly correct, as a general proposition, though there are cases where it becomes the duty of the street railway to warn its passengers of the unsafe condition of a street, known to those in charge of its car, but unknown or not plainly discoverable to the passenger, and to assist the passenger in alighting. Here, however, at the place of this accident, the railway was not upon a city street, but upon its own *private* right of way, a fact which at once broadly discriminates the present case from all those relied on by the appellee, and which effectually deprives it of recourse to the exemption from liability above-mentioned. Two of the cases cited by the appellee state very clearly the reason for the rule invoked by it, and no less clearly indicate the circumstances in which it cannot be applied. In *Scanlon* v. *Phil. Traction Co.*, 57 Atl. Rep. 521, where a verdict was directed for defendant, the Court said : "This car was running upon the public highway, over which, it must be remembered, the defendant company has no control. In laying its tracks it must conform to the established grade. It can neither construct, nor alter, any of the places at which passengers are to step on or off cars * * * Passengers leaving the cars must step upon the surface of the street in the condition in which it is placed by the city, which fixes and maintains the grades. * * *. Obviously, the rules which may reasonably apply to steam railroads owning their own right of way, and having complete control of the approaches thereto, cannot reasonably be applied to street railways which have not the right of eminent domain, and are only allowed the use of the highways in common with other vehicles." In *Creamer* v. *West End Railway*, 156 Mass. 321, where a similar verdict was directed, the Court said : "But when a common carrier has the exclusive occupation of its tracks and stations, and can arrange and manage them as it sees fit, it may properly be held that persons intending to take passage upon, or leave, a car, have the relation and rights of passengers in leaving or approaching cars at stations.".

Where, as in the case before us, the street railway owns

and controls the place where the accident occurs, and has either constructed, or adopted, platforms provided for the regular receipt and discharge of passengers, the reason for the rule, as to such places, ceases, and the rule must cease to operates as to such. We can perceive no reason upon principle, why, as to the place of this accident, this defendant should not be held to the same liability as regards a passenger, as a steam railroad, and this conclusion necessarily follows from the two cases last cited. The case of *Bigelow* v. *West End Railway*, 161 Mass. 393, so much relied on by the appellee, was the case of an accident in alighting upon a public street undergoing repair, and thereby rendered unsafe; it may therefore be eliminated from our consideration. For the same reason we may dismiss the argument of the appellee, when he says, "The construction of the platform made alighting from the car a little more convenient, but it did not render dangerous the stopping of the car at other places on the embankment, when that stopping had not been dangerous before the platform was built." The embankment being on the property of the defendant and under its control, it would have been an unsafe and dangerous place to let passengers off, if no platform had ever been constructed or adopted by the defendant for that purpose. The same rule, under the facts of this case, in our opinion, is applicable to the defendant, as would be applied to a steam railroad owning its right of way. There can be no question what this rule is. It is firmly established that the relation of passenger does not cease upon the arrival of a train at the passenger's destination, but continues until he is afforded an opportunity safely to alight. This has been emphatically declared in this State in *P., W. & B. R. R.* v. *Anderson*, 72 Md. 526, where this Court said: "They (carriers of passengers) are bound to use the utmost degree of care, skill, and diligence in everything that concerns the safety of passengers; nor are their duties limited to mere transportation of them. They are bound to provide safe and *convenient* modes of access to their trains, and of departure from them." This duty has been variously stated elsewhere. In *Gaynor*

v. *Old Colony R. R.*, 100 Mass. 208, it was said, "the passenger is entitled to the exercise of the utmost care and diligence in providing against those injuries which can be avoided by human foresight, not only while on the cars, *but while on the premises* "of the defendant." In *Pa. R. R. Co.* v. *McCaffrey*, 173 Ill. 169, the company was held "to the highest degree of care and skill reasonably practicable in providing a safe passage from the train;" and in *St. Louis R. R. Co.* v. *Finley*, 79 Tex. 85, it was said "the company owed the passenger the duty of exercising the highest degree of care in enabling her to make the descent in safety." But it would be idle to multiply illustrations of this rule. When therefore this defendant entered into the occupation of its own right of way, under its own exclusive control, it subjected itself, as respects the receipt and discharge of passengers upon that right of way, to the duty imposed by the rule stated. It might have required passengers for Chelsea Terrace to get on and off at the intersection of that Terrace with Clifton avenue, thus alighting upon the public street, if unwilling to assume the burden of that rule, but it did not do this. If it had undertaken to receive and discharge passengers upon the embankment described, without any platform or other provision for their safety, it would have neglected the duty imposed by that rule. Having either constructed, or adopted the platforms described in the testimony, it *so far* complied with that rule, since it cannot be material whether the company built or adopted the platforms, and it has been held that the adoption of a platform neither owned nor constructed by the company, creates an implied contract that passengers may rely upon its use. *Haselton* v. *Portsmouth St. R. W.*, 71 N. H. 589; *Louisville R. R.* v. *Johnson*, 79 Ala. 414.

The rule imposes the duty not only to provide, but to *use* safe means of passage from the car. This the defendant did not do in this case, though twice informed that the plaintiff wished to alight at this first platform. Instead of stopping there, the conductor passed both platforms, and then stopped the car on this steep embankment for the plaintiff to alight

there. That this was negligence we cannot doubt. In 5 *A. & E. Enc. of Law*, 574, it is said : "It is the duty of the conductor of a railroad train to stop its cars alongside the platforms at its stations, so that passengers may have a safe landing, and if passengers are required to alight at any other point, the company is liable for an injury to them resulting thereby." In *Memphis & Charleston R. R.* v. *Whitfield*, 44 Miss. 481, the Court said : "In passing the platform, and requiring the passenger to alight, without assistance, in an unusual place and without a safe spot to alight upon, the company was *prima facie* guilty of a neglect which it was the province of the jury to characterize from the evidence, whether it were justifiable or excusable. Stopping the train at an unusual place, rendered the company presumptively in the wrong to that extent, and the *onus* of explaining this neglect was thrown upon the defendants. A railroad company stopping its trains for passengers at a place so steep that they could not easily climb upon the train would be bound to assist them to do so, and most assuredly not less so, to aid a passenger in alighting under similar circumstances." We have cited this passage at some length because the case is so closely analogous to that before us, but the principle there decided is the same decided in *United Railways* v. *Biedelman*, 95 Md. 483, and in *United Railways* v. *Woodbridge*, 97 Md. 633, in both of which was repeated the oft declared rule that "proof of the occurrence of an *accident* and of injury to a passenger is *prima facie* evidence of negligence in the carrier, and throws upon him the *onus* of rebutting the presumption by proving there was no negligence on his part." In all these cases as was said in *Benedick* v. *Potts*, 88 Md. 57, "The inference of negligence arises not from the injury to the passenger, but from the *act* that caused the injury," which in this case was the failure to stop at the platform. Thus explained and understood, no rule in the law of negligence is more firmly established.

For these reasons we think there was error in granting the defendant's first prayer.

The question of contributory negligence raised by defend-

ant's second prayer remains to be considered.   This question, like that of defendant's negligence, is primarily one for the jury.   It is only in those cases where the material facts are undisputed, and where but one reasonable inference can be drawn from them that either question can become a matter of law for determination by the Court.   *Jones* v. *United Railways, ante* p. 64.

But it is essential to remember that while common carriers are held to the exercise of the highest degree of care consistent with their undertaking, passengers are required to exercise only ordinary care and prudence.   In *Cooke* v. *Balt. Traction Co.*, 80 Md. 588, this Court has said, "Where the nature and attributes of the act relied on to show negligence contributing to the injury can only be correctly determined by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the Court to determine its quality as matter of law."

Among the surrounding circumstances of the present case two may be specially mentioned; 1st.   The fact testified to, that the appearance of the place was deceptive, the heighth and slope of the embankment being concealed by tall grass and weeds; and 2nd, the invitation to her to alight implied by the conduct of the conductor.

She testified that when she prepared to alight she looked down at the ground which was covered with grass and weeds ; "that it looked perfectly safe, and that she would not have ventured out of the car if she had perceived or suspected danger."   Her son testified that "there was a dense growth of weeds and long grass; that it was a very deceptive looking place, and no one could see where they were stepping unless they knew all about the place."   If she knew, or should have known, in the exercise of ordinary care and prudence, that she was about to alight upon a steep slope and that her foot in stepping from the car could not reach the ground, she would be negligent in taking this risk, but if, after looking as she says she did, she could reasonably believe she would alight upon

a safe surface within reach of her foot in stepping down, she would not be negligent. While the conductor was negligent in not stopping at the platform, it would be unfair to him to assume that he knew she could not safely alight on the embankment, and recklessly permitted her to attempt it, and if he, an experienced employee of the railway, presumably familiar with the place, did not perceive danger in such attempt, it would surely not be reasonable to deny to a woman, unacquainted with the place, the benefit of the same presumption. In *Mayor* v. *Pendleton*, 15 Md. 12, where the *appearance* of a trench across the street was that of firm ground, and a horse was injured in attempting to pass over it, the owner was held free from contributory negligence. The essential question upon the testimony here is, whether she saw, or with ordinary care and prudence should have seen, that she must step upon a steep declivity beyond the reach of her foot in the act of stepping down and under the circumstances of this case, a verdict of the jury, is, in our judgment the only proper mode of determining this essential fact. 5 *A. & E. Enc. of Law*, 652.

Moreover, the implied invitation of the conductor to alight at that place, cannot be overlooked in passing upon plaintiff's alleged negligence. This is a question of fact to be determined from the conductor's action and conduct, as well as from express words, and without reciting the testimony again upon that point, we think it is clear she was so invited. *B. & O. R. R. Co.* v. *Stumpf*, 97 Md. 78. It has been held in numerous cases that an invitation by one in charge of the train to alight at a place other than the station is held sufficient authority for the passenger to do so. *Foy* v. *London R. R. Co.*, 18 C. B. N. S. 225; *Raben* v. *Central Iowa R. R.*, 74 Iowa, 732; *Cartwright* v. *Chicago R. Co.*, 52 Mich. 606; *Liverett* v. *Shreveport Belt R. R.*, 34 So. Rep. 579, and this Court has practically so held in *B. & O. R. R.* v. *Leapley*, 65 Md. 571.

In *Cartwright* v. *Chicago R. R.*, *supra*, CHIEF JUSTICE COOLEY said, "Where a train stops at a platform so that nothing but the forward end of the smoking car is at the platform,

passengers in the cars, especially ladies, are not bound to go through the smoker to alight, and if, in consequence of the position of the train, they are injured in alighting, it is the fault of the company  *  *  *  *. If a car in which there were passengers was not standing where it would be safe for them to alight without assistance, it was the duty of the company to provide assistance, give warning, or move the car to a suitable place. *Cockle* v. *London & S. E. R. W.*, L. R., 7 C. P. 321; *Pa. R. R.* v. *White*, 88 Pa. St. 327." We have cited this passage at length, not only because of the high authority of JUDGE COOLEY, but because the facts of that case so closely resemble those of the present case. In the case cited, "there was a road-crossing at the place where the car stopped, and she thought the car stood where, if she stepped down, she would step upon the level road. She had several packages on her left arm, but her right hand was at liberty, and with that she took hold of the iron rod by the side of the steps. Instead of being on a level road as she supposed, the end of the car was over a depression at the side of the road, and when her foot left the step she went down so far that her hold of the iron was broken, and she fell to the ground."

Upon this state of facts, JUDGE COOLEY added: "We also think that passengers when not notified to the contrary, may rightfully assume that it is safe to alight from the car wherever it is stopped for passengers to leave it  *  *  *  *. If she had the right to assume the landing place was safe, she was not negligent in stepping down as she did." We understand this to mean she was not negligent as matter of law, and so understood we concur in that decision.

In line with that decision, and closely analogous with the facts of the present case, is that of *Fellingham* v. *St. Louis Transit Co.*, 77 So. W. Rep. 315, (St. Louis Ct. of Ap.). An electric car ran through a country district past a platform provided for the use of passengers. There was a footboard along the side of the car, and plaintiff was permitted to alight, without assistance, from the car, at a place testified by her to be

three or four feet, and by others twenty-two inches below the footboard, where the ground was uneven, and it was held that "Plaintiff was not guilty of contributory negligence, as matter of law, in stepping down, or in not demanding the return of the car to the platform, nor in relying on the judgment of the car men, and their invitation to alight, unless the danger of alighting was so extreme and apparent as to deter a person of ordinary prudence."

In *Richmond City* v. *Scott*, 86 Va. 902, it was held that street railways are as much bound as steam railroads to warn passengers about stepping down, of threatened danger, and in *Foss* v. *Boston and Maine R. R.*, 11 L. R. A. 367, it was expressly held by the Supreme Court of New Hampshire that the question of contributory negligence of a passenger in getting off a train which has gone past the station before stopping, where the place is a bad one to alight, is for the jury.

To the same effect is *Joslyn* v. *Milford Street Railway*, 184 Mass. 63, (67 N. E. Rep. 686), a case almost identical with the present, recently decided by the Supreme Court of Massachusetts.

An interesting collection and instructive review of the leading cases upon this subject will be found in *Nellis on Street Railway Accident Law*.

> *The judgment is reversed with costs to the appellant above and below, and new trial awarded.*

(Decided November 17th, 1904.)