GARFIELD AND PROCTOR COAL COMPANY *vs.* ROCKLAND-
ROCKPORT LIME COMPANY.

Suffolk.   November 19, 1902. — June 23, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Ship.   Damages.   Negligence.*

Because the master of a vessel knows that in entering a certain dock he will have to go through some mud he does not take the risk of an injury to his vessel from a ledge of rock embedded in the mud, if in entering the dock he exercises reasonable care.

In an action for an injury to the plaintiff's vessel from grounding on a ledge of rock embedded in the mud at the bottom of the defendant's dock, it appeared that the master before entering the dock reported the draft of his vessel to the defendant's agent in charge of the dock and inquired of him in regard to the depth of the water and the character of the bottom, and was assured by the agent that there was plenty of water and that the bottom was good. *Held,* that the master was justified in relying on the statement of the defendant's agent and was under no obligation to take soundings.

In an action for an injury to the plaintiff's vessel from grounding on a ledge of rock in the defendant's dock, a ruling, that if the defendant was liable the plaintiff was entitled to recover the fair value of the vessel to the plaintiff during the time needed to repair her, was stated by the court to be correct in law, although the finding of the trial judge made it immaterial.

In an action for an injury to the plaintiff's vessel from grounding on a ledge of rock embedded in the mud at the bottom of the defendant's dock, it is not necessary for the plaintiff in order to recover to show that the defendant knew of the ledge if its existence could have been discovered by reasonable diligence.

TORT, by the owner of the coal barge Western Belle, for injury to that vessel by grounding on a ledge of rock embedded in the mud at the bottom of the defendant's dock at Rockland, Maine.   Writ dated May 4, 1901.

In the Superior Court the case was tried before *Fox,* J., without a jury.   Norton mentioned below was the defendant's foreman at the dock.

The plaintiff requested the judge to make the following rulings:

"1. The master of the Western Belle was justified in relying upon the statement of Norton that the berth was a proper one and was under no obligation to take soundings.

" 2. If the defendant is liable the plaintiff is entitled to recover the fair value of the vessel to the plaintiff during the time needed to repair her.

" 3. If Norton, the defendant's wharfinger, stated that the berth was proper for her, the defendant is liable for an injury caused by the vessel's resting on the ledge, although Norton and the defendant were ignorant of the existence of the ledge, if sounding the mud would have disclosed it.

" 4. It is not necessary for the plaintiff to show that the defendant knew of the ledge; it is sufficient if its existence could have been discovered by reasonable diligence."

The judge refused to make any of these rulings, and found for the defendant. The plaintiff alleged exceptions.

*H. Wheeler*, for the plaintiff.

*R. M. Saltonstall*, for the defendant.

LATHROP, J. The judge of the Superior Court, who tried this case without a jury, found for the defendant, and stated the reasons for his finding. Some of these reasons do not appear to be in accordance with the evidence, nor to be warranted by it; and the judge concludes his subsidiary findings by the statement that the master of the vessel " knew that in order to reach the berth designated, his keel must plough the mud a depth of two feet, and that the bottom would be searched by his barge as it had not been searched by a vessel before." And he ends by saying: " I am of opinion that the loss should rest where it has fallen." There is no finding that the master of the vessel was not in the exercise of due care, and the theory on which the decision apparently rests is that the master took the risk.

We will now point out wherein it seems to us that the judge was not warranted by the evidence in some of his subsidiary findings. In the first place the judge states: " It does not appear that any vessel had ever been in the dock before drawing more than twenty feet of water." Crockett, a witness for the defendant, who was interested in the defendant company, and had charge of its local business at Rockland, testified that prior to June, 1900, when the accident occurred, " the wharf had been used for loading and unloading vessels of all sizes, from small schooners to large ships drawing more than twenty feet." Norton, an employee of the defendant, testified in its behalf that he

had seen a vessel in this dock drawing more than the plaintiff's vessel, "a vessel that drew twenty-three feet, at least." The judge further says: "The captain of the harbor tugboat employed by the barge told her master that he thought it doubtful whether there was enough water." Holmes, the master of the tugboat, testified "that he told the master of the barge that he thought it was doubtful if there was water enough to go into that berth, and that the master asked him if the bottom was all right there, and Holmes said that it was, as far as he knew." This puts a somewhat different light upon what the judge evidently considered a warning. We are also of opinion that the judge was not warranted in finding that "the master knew that his keel must plough the mud a depth of two feet." There was evidence that the vessel drew "twenty-one feet forward and twenty-two feet aft, and there were figures on her bow and stern indicating the draught." The principal damage to the vessel was just forward of amidships, where the draught would be less than twenty-one feet, six inches.

The judge found that other vessels "had lain there before without injury." There was evidence to warrant a finding that vessels had lain at the dock before without injury, but it does not appear that these vessels had rested on the ledge. While such evidence is often admitted in this class of cases, its admissibility is very questionable. It would seem to come within the rule that the fact that other persons have not suffered by an alleged defect, is immaterial. *Aldrich* v. *Pelham*, 1 Gray, 510. But if such evidence is admissible, to entitle it to any weight, it should appear that the other vessels were of the same length, breadth, and flatness, as was the plaintiff's vessel, and were as heavily loaded as she was. The defendant made no attempt to prove any of these things. The value of such evidence is to show the existence of no defect, but, as was said by Judge Wallace in *Smith* v. *Havemeyer*, 36 Fed. Rep. 927, 928, it becomes quite unimportant when it appears beyond doubt that there are defects capable of producing mischief which could have been readily discovered by proper examination.

The general rules of law which are applicable in cases of this character are the same in England and in this country, and are the same at common law and in admiralty. They are as well

stated in the case of *Nickerson* v. *Tirrell*, 127 Mass. 236, 239, as perhaps in any case: " The owner or occupant of a dock is liable in damages to a person who, by his invitation express or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care. Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such due care, if there is a defect which is known to him, or which by the use of ordinary care and diligence should be known to him, he is guilty of negligence and liable to the person who, using due care, is injured thereby. *Wendell* v. *Baxter*, 12 Gray, 494. *Carleton* v. *Franconia Iron & Steel Co.* 99 Mass. 216. *Thompson* v. *Northeastern Railway*, 2 B. & S. 106. *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93." Other cases bearing upon this point are: *Smith* v. *Burnett*, 173 U. S. 430; *Barber* v. *Abendroth*, 102 N. Y. 406; *Barrett* v. *Black*, 56 Maine, 498; *Sawyer* v. *Oakman*, 1 Lowell, 134, *S. C.* 7 Blatchf. 290; *The John A. Berkman*, 6 Fed. Rep. 535; *Pennsylvania Railroad* v. *Atha*, 22 Fed. Rep. 920; *Smith* v. *Havemeyer*, 36 Fed. Rep. 927; *Manhattan Transportation Co.* v. *Mayor*, 37 Fed. Rep. 160; *Union Ice Co.* v. *Crowell*, 55 Fed. Rep. 87. The rule is the same in England. *Gibbs* v. *Liverpool Docks*, 3 H. & N. 164; *S. C. nom. Mersey Docks* v. *Gibbs*, 11 H. L. Cas. 686, and L. R. 1 H. L. 93. *The Moorcock*, 13 P. D. 157, and 14 P. D. 64.

We have examined all the cases cited by the counsel on each side, and also other cases, but we have found none in which the doctrine of the assumption of the risk has been applied. It may however be true that where a master of a vessel knows of a hidden obstruction in a dock and takes his vessel in he acts so carelessly that he may be said to assume the risk. The case of *Christian* v. *Van Tassel*, 12 Fed. Rep. 884, was decided upon the general principles we have stated, but Judge Brown, in giving the opinion, apparently in answer to an argument of counsel, said: " The libellant, in voluntarily moving the boat forward upon what was known to be shoal water, took the risk

of whatever might result from grounding upon the usual mud bottom, . . . but he did not take the additional risk resulting from the stones, of which he was not apprised and for which the respondent must be held responsible."

It is clear that the vessel was in the defendant's dock on business, and was, therefore, there by invitation. The judge has found, and the evidence shows, that the injury was caused by a ledge of rocks embedded in the mud at the bottom of the dock. The questions of fact which he did not pass upon are whether the master was in the exercise of due care, and whether the defendant knew of the defect or could by the exercise of reasonable care and diligence have ascertained its existence.

If the master exercised reasonable care and the defendant was negligent, it cannot be said that the master took the risk of the ledge merely because he had to go through some mud.

We are of opinion, therefore, that the case was not decided upon the application of proper principles of law, and that there must be a new trial.

The first request we are of opinion should have been given. We are not aware of any case in which it has been held that the master of a vessel which is to lie in a regular berth at a wharf is obliged to take soundings, though such an obligation may be held to exist where a vessel is to take ground at a place where vessels do not usually lie. As to the authority of Norton, it is plain from the evidence that he was the agent of the defendant on the wharf, and gave all the directions to the master that were given in respect to the berth the vessel was to lie at. The master reported to him before the vessel was hauled in, inquired the depth of the water and the character of the bottom. He was assured that there was plenty of water, and the bottom was good. This bears directly upon the question of the due care of the master. There was some attempt to show that Norton was only the general superintendent of certain branches of business, such as loading cars and vessels with lime, " discharging vessels with coal, taking account of cooperage, etc. etc." There is nothing in the evidence to show that the defendant had any one else on the wharf with authority to give directions to vessels coming there, and to answer questions in regard to the depth of water and the nature of the bottom. Indeed there is no evi-

dence that the defendant directly denied Norton's authority to do all that he did in this case.   Norton was ostensibly the person in charge of the wharf, and by a familiar principle of agency, the defendant cannot show that he had only limited authority. *Pennsylvania Railroad* v. *Atha*, 22 Fed. Rep. 920.   The request therefore should have been given.

The second request states a correct principle of law, but it is rendered immaterial by the judge's finding.   The third request is perhaps stated too broadly.   The fourth request should have been given.   See cases cited above.

*Exceptions sustained.*