**C. F. HARMS CO. v. UPPER HUDSON STONE CO. et al.**

(Circuit Court of Appeals, Second Circuit. April 11, 1916.)

No. 231.

1. SHIPPING ☞54—CHARTERS—LIABILITY OF CHARTERER FOR INJURY TO VESSEL.

A time charterer of a scow, under a charter party containing no covenant for her return in good order and condition, can be held liable for her injury only on the ground of negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. ☞54.]

2. WHARVES ☞20(2)—INJURY TO VESSEL AT WHARF—LIABILITY OF WHARFINGER.

The lessee and manager of a wharf, who directed the placing of a scow alongside while waiting for a discharging berth, *held* solely liable for her injury by settling on a lump on the bottom with the falling tide; none of those connected with her navigation having knowledge of the obstruction.

[Ed. Note.—For other cases, see Wharves, Cent. Dig. § 36; Dec. Dig. ☞20(2).]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by the C. F. Harms Company, owner of the scow Castor, against the Upper Hudson Stone Company, Paladino & Bros., Henry Crew, Alfred Grant, and David E. Love, as owners of the tug H. B. Moore, Jr., and John J. Guinan, impleaded. Decree for libelant against Guinan, who appeals. Modified and affirmed.

For opinion below, see 225 Fed. 630.

A. Leo Everett and Everett, Clarke & Benedict, all of New York City, for appellant.

Mark Ash and Alexander & Ash, all of New York City, for appellee Hudson Stone Co.

G. V. A. McCloskey, William J. Martin, and Foley & Martin, all of New York City, for appellees Crew and others.

F. V. Barns and James J. Macklin, both of New York City, for appellee C. F. Harms Co.

Before COXE and WARD, Circuit Judges, and LEARNED HAND, District Judge.

WARD, Circuit Judge. The libelant, Harms Company, owner of the scow Castor, chartered her to the respondent Upper Hudson Company under a time charter. The Hudson Company loaded her with stone consigned to Paladino Bros. alongside the bulkhead of John J. Guinan in Coney Island creek, between West Twenty-Second and Twenty-Third streets, Brooklyn, and directed the tug H. B. Moore, Jr., to tow her there. The scow arrived at the bulkhead at 5 p. m. at half flood tide and, the discharging berth being occupied, Guinan's agent directed her to be made fast at the bulkhead astern of the boat that was unloading, which was done. Early the following morning,

as the tide fell, the starboard quarter grounded on a lump, and, the rest of the scow continuing to fall with the tide, she was badly twisted and strained. Her owner filed this libel against the charterer to recover his damages on the ground that it had ordered her to an unsafe berth.

[1] The charter party containing no covenant to return in good order and condition and the claim being in tort, the charterer can be held only for negligence. It brought in Paladino Bros., the consignee, Crew and others, owners of the tug, and John J. Guinan, the wharfinger, as parties defendant, under the fifty-ninth rule. Paladino Bros. defaulted. The District Judge entered a decree in favor of the libelant, with costs, against Guinan, dismissed the libel as to the Upper Hudson Company and also as to Paladino Bros., without costs, and as to Crew and others, with costs to be taxed against the Upper Hudson Company. Guinan appealed, and the libelant, having sought affirmative relief in this court, is to be treated as appealing also. The S. V. Luckenbach, 197 Fed. 893, 117 C. C. A. 214.

[2] Careful soundings after the accident showed that the bottom shelves out from the bulkhead and that there is a lump opposite and some 10 to 15 feet outside of it. The master of the scow was employed by her owner, the libelant, and testified that he was ordered by the wharfinger's agent to make fast in the place where he did and to breast over the stern some 8 feet, while the agent says he told him to breast over 10 to 15 feet. However, he did breast over a distance estimated by the various witnesses at from 8 to 20 feet. He also on arrival made soundings with a pike pole, which indicated no danger, but which, as the boat was 31 feet in beam, would, of course, not have discovered the lump, then somewhere under her bottom.

The president of the charterer, before sending the boat to the wharf, had a conversation with Guinan, who assured him that there was 12 feet of water there. Although it was generally known that at low tide loaded boats would take the bottom, the master of the tug did not know of this lump, and did not leave until the boat had been made fast in the place where the wharfinger's agent directed.

Under these circumstances we discover no negligence in the master of the scow, the charterer of the scow, or the master of the tug, and think Judge Chatfield was clearly right in laying the responsibility for what happened on the wharfinger. He was lessee of the whole bulkhead, discharged the boats which came there, and collected wharfage while they stayed. It was his duty to know the character of the bottom, and to see that boats coming there should be adequately informed of any and all dangers. We do not understand the principle on which costs were taxed in the District Court, and direct the court to enter a decree in favor of the libelant for its damages, with costs of the District Court, and, as it also appealed, with half costs of this court against Guinan; dismissing the libel as to the Upper Hudson Stone Company, with costs of the District Court and one-half costs of this court against the libelant, the other half of the costs of this court to be taxed against Guinan; dismissing the libel against Crew

and others, owners of the tug Moore, with costs of both courts against the Upper Hudson Company, which brought them in; and dismissing the libel against Paladino Bros., who defaulted, without costs.