**EMPIRE BRICK & SUPPLY CO. v. HINES, Director General of Railroads.**

(District Court, S. D. New York. March 17, 1921.)

1. **Shipping ☞54—Duty of charterer to move barge moored in exposed position to prevent damage from gale.**

    It was duty of charterer of barge, as bailee, to have shifting tugs available to move barge moored in exposed position to safe place, to prevent damage from long-continued and increasing gale.

2. **Shipping ☞58(2)—Evidence held insufficient to establish oral agreement to return barge in as good condition as delivered.**

    On libel for damage to barge chartered to Director General of Railroads under oral charter, evidence *held* insufficient to establish agreement to return barge in as good condition as when delivered.

3. **Shipping ☞54—In absence of contract, charterer not liable for injury to vessel without negligence.**

    Where charter party contains no covenant for return of vessel in good order, there is no liability for injury to vessel without negligence.

4. **Shipping ☞58(2)—Libel held prima facie to show negligence and breach of implied condition of hiring.**

    Libel for damage to barge, chartered under oral contract, alleging barge was delivered in good condition and returned in damaged condition, *held* prima facie to show negligence, and breach of implied condition to properly care for it attending every contract of hiring.

5. **Shipping ☞54—Charterer held negligent in failing to move barge to safe place.**

    Charterer of barge damaged by storm, *held* negligent in failing to move barge from exposed position.

In Admiralty. Libel by the Empire Brick & Supply Company against Walker D. Hines, as Director General of Railroads, operating the Pennsylvania Railroad Company. Decree for libelant. Affirmed in 300 Fed. 685.

Alexander & Ash, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for respondent.

AUGUSTUS N. HAND, District Judge. This libel is for injury to libelant's barge Empire No. 13, chartered to the Director General of Railroads under an oral charter. The evidence shows that the barge was delivered to the respondent in good condition on the 19th of February, 1919, and remained in his possession until February 28, 1919, when she was returned to the libelant. When returned, she had suffered damage which was due to her rubbing against the barge Tail Light, moored next her on one side, and the Fresh Water, on the other. She was in charge of a scowman, Charles Miller, employed and paid by the libelant. She had three fenders on both sides, one forward, one aft, and one amidships. She was 15 or 20 feet longer than the Tail Light. The latter barge was placed beside the Empire No. 13 at 2:20 a. m. on February 27th, at Pier C, Staten Island. The wind blew on February 28th, at 5 o'clock, at about 29 miles an hour, and increased more or less steadily during the night until, at 5 o'clock the next morning, it reached a velocity of 64 miles. The respondent berthed both barges, and the master of the Empire No. 13 did nothing to secure a

safer berth, except to ask some one on the Fresh Water, the steamer alongside of which the barges were moored, to let a ladder down. This request was refused.

[1] Under the decision of The Carroll, 248 Fed. 475, 160 C. C. A. 485, it was said that the barges without motive power are insured from injury by removing them to more sheltered berths, and that danger under such circumstances should be avoided by the exercise of this "ordinary skill and care." The court there held that the charterer was liable unless the injury was caused by the negligence of the master. I cannot see that the master could have done anything effective to protect his barge, except to use fenders, which were employed and did not save her from injury. I think it was the duty of the charterer, as bailee, to have shifting tugs available to prevent what occurred, where there was such a long-continued and constantly increasing gale of wind blowing and the barge was in an exposed position.

[2, 3] The libel was brought in contract, on the ground that there was an oral charter under the terms of which the barge was to be returned in as good condition as when chartered, reasonable wear and tear excepted. Mr. Harrington, who had general charge of the hiring of scows for the Director General of Railroads, testified positively that in all cases he agreed to hire barges without any such provision. The testimony of Ambery, libelant's witness, as to an oral agreement such as is relied upon, is too vague to meet the express denials of Mr. Harrington, who, as a government official, was a fairly disinterested witness. Moreover, Mr. Ambery, when recalled, seemed finally to base his testimony of an oral agreement to indemnify the owner upon little more than a statement by Mr. Harrington as to whom he should notify of the damage to the barge. The latest decision of the Circuit Court of Appeals in the case of Schoonmaker Conners Co. v. Lambert Transport Co., 268 Fed. 102, says:

"It is settled law that, where a charter party contains no covenant for the return of a vessel in good order and condition, there is no liability for injury to the vessel without proof of negligence."

[4] It is true that the libel pleaded a contract to return in good order, which I find was not made. If the allegation of a contract to return in good order, "reasonable wear and tear excepted," be disregarded as surplusage, there is still an allegation of a contract of hiring, with a statement that the boat was received in good condition and returned in damaged condition. This I think prima facie shows negligence, and breach of an implied condition to care for the boat properly which would attend every contract of hiring.

[5] The respondent attempted to meet the charge of lack of care of the boat by showing that she was placed in a proper slip, had fenders on her, and that the Tail Light likewise had fenders. The libelant met this by showing that the Tail Light had no fenders along her sides, at either her stem or stern, was a shorter barge, and would consequently jam the Empire No. 13 in the heavy ground swell caused by the severe wind; that the gale continued a long time, during which respondent should have had tugs to shift such a barge to a place of greater safety, and that the respondent failed to do this. Negligence was established

in not taking any measures to move the barge to a safe place in a storm, the long continuance of which furnished ample warning for the respondent.

I therefore grant an interlocutory decree for the libelant.