## C. F. HARMS CO. v. TURNER CONST. CO.

(Circuit Court of Appeals, Second Circuit. November 21, 1924.)

### No. 15.

1. **Shipping ⬅54, 58(2)—In absence of contract, charterer liable for negligence only; burden on owner to prove negligence.**

In absence of contract, charterer of barge is liable to owner for negligence only, and burden is on owner to prove negligence.

2. **Evidence ⬅10(5)—Judicial cognizance taken of difference between high and low water at Dutch Kills creek.**

It is common knowledge, from tide tables, of which court takes cognizance, that difference between high and low water at Dutch Kills creek is slightly less than five feet.

3. **Shipping ⬅58(2)—Evidence held insufficient to show negligence of charterer in berthing barge at wharf.**

Evidence *held* insufficient to show negligence of charterer in berthing barge at wharf.

4. **Shipping ⬅62—Owner and not charterer of barge held liable for injuries from master's failure to obey wharfinger's instruction.**

Where master of barge failed to obey wharfinger's instruction to breast off 5 feet from bulkhead, so that barge would clear ridge of mud at low tide, owner, and not charterer was liable for injuries resulting therefrom.

Learned Hand, District Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the C. F. Harms Company against the Turner Construction Company. From a decree dismissing the libel (290 F. 612), libelant appeals. Affirmed.

Libelant owned the covered barge Bull, and chartered her with master aboard to respondent for the express purpose of carrying cement. The charterer loaded her with about 460 tons, and dispatched her to a wharf or bulkhead in Dutch Kills creek, where she had been before, sometimes laden with the same kind of merchandise. The draft of the Bull on this occasion nowhere definitely appears, but libelant stated that she had about "9½ feet depth of hold," which phrase, as she was an ordinary covered barge, carrying cargo on deck, we take to mean the height of her side. She could carry 500 tons, and was therefore nearly fully laden. Consequently, since it is known how little freeboard vessels of this kind have (except for the house), we do not believe the loose estimate of libelant's "outside foreman" that the Bull, with 400 tons on board, would "draw about 7 to 8 feet

anyway." She must have been drawing almost the depth of her side, or about 9 feet.

She arrived at her destination at 9 o'clock on a Saturday morning, and the evidence is clear that her master was instructed by the wharfinger's agent to breast off 5 feet from the bulkhead, so that at low tide the boat would clear a "ridge of mud" near said bulkhead. Unloading her cargo began at once, and by noon, when the laborers seem to have ceased work, she had been lightened by at least 45 tons. The tide was dead low at 2:20 p. m., and the Bull rode out that tide apparently afloat, and certainly without known injury.

That afternoon or evening her master left her. The tide was low again at 3:04 on Sunday morning, and at a quarter of 7 she was observed by a witness listing away from the bulkhead, and some part of her deck was under "about 3 inches of water." Her stern seems subsequently to have broken the line connecting it with the bulkhead and to have slipped away from the wharf, so that she ultimately lay on the bottom, with her starboard bow less than 3 feet from the pier side, and her stern about 10 feet therefrom. Her master did not testify.

Libelant's "outside foreman" subsequently caused soundings to be made around the Bull as she lay in the position above indicated, and declared that at an extreme low tide the side nearest the bulkhead showed from 3 feet 2 inches to 4 feet 6 inches of water, while the other side was in a depth varying from 4 feet at the stern to 9 feet at the bow. The government chart of Dutch Kills shows a depth of mean low water in 1922 of nowhere less than 10 feet.

The court below dismissed the libel, and respondent appealed.

Walter B. Hall, of New York City, for appellant.

Bigham, Englar & Jones, of New York City (Henry N. Longley and F. Herbert Prem, both of New York City, of counsel), for appellee.

Before HOUGH and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

HOUGH, Circuit Judge (after stating the facts as above). [1] The pleadings herein give no indication of the case that was actually tried. Libelant sued upon a breach of an alleged contract to return this chartered vessel in the same order and condition in which she was received, ordinary wear and tear excepted, and no such contract was proven. Therefore respondent, as charterer, was liable for negligence only, and the burden was upon libelant to prove it. Harms v. Upper Hudson Co., 234 F. 859, 148 C. C. A. 457; Schoonmaker v. Lambert (C. C. A.) 268 F. 102.

[2] The evidence given as to soundings around the barge as she lay sunk proves too much, for we take cognizance of the fact revealed to common knowledge by the tide tables that the difference between high and low water in such a place as the Dutch Kills is slightly less than 5 feet; so we cannot place any confidence in these soundings, for if they are correct the Bull could not have gotten into the position where she was at full high tide, yet she undoubtedly got there without difficulty, and lay peacefully discharging her cargo for several hours before low water.

[3, 4] The libelant, through its master, was responsible for the maintenance and care of the Bull's lines, and, if the "ridge of mud" of which the master was warned had anything to do with this accident, libelant is responsible for not having obeyed the admonitions of the wharfinger's agent. Morey v. New Rochelle, 254 F. 425, 166 C. C. A. 57. It is enough to conclude that libelant wholly failed to show by a fair preponderance of evidence any negligence on the part of respondent. The case would have been clearer and much easier to try, had the libel even faintly responded to what the libelant was prepared to prove.

Decree affirmed, with costs.

LEARNED HAND, District Judge, dissents.