SCHOONMAKER–CONNERS CO., Inc., v.
NEW YORK TIDEWATER GRAVEL
CORPORATION et al.

(Circuit Court of Appeals, Second Circuit.
March 26, 1926.)

No. 252.

1. **Towage** ⬤➡11(10)—**Tug, leaving scow as near dock as depth of water permitted, is not at fault for injury to scow by reason thereof; consignee of cargo and charterer being chargeable with knowledge of conditions making it impossible to tie scow alongside dock.**

Where tug, after towing scow as near dock as depth of water would permit, was informed that it would be all right to leave, tug was not at fault for injuries to scow; consignee of cargo and charterer of scow being chargeable with knowledge of conditions making it impossible to tie scow alongside dock.

2. **Towage** ⬤➡11(10).

Placing scow as near dock as practicable, where she would lie on even mud bottom at ebb tide, did not constitute negligence or improper towage.

3. **Towage** ⬤➡11(10).

Tug, towing barge, has duty to take her as near dock as is safe, and has no obligation to stand by.

4. **Shipping** ⬤➡54—**Consignee of scow's cargo held liable for negligent attempt, by means of motor truck and jackscrew, to land her alongside dock in shallow water.**

Consignee of cargo, attempting to haul scow alongside dock in shallow water by using motor truck and jackscrew, *held* liable for negligence.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Schoonmaker-Conners Company, Inc., against the New York Tidewater Gravel Corporation, wherein Paul J. Exner & Son, Inc., the R. W. S. Corporation, the steam tug Hempstead, and the Red Star Towing & Transportation Company were impleaded. Decree against the steam tug Hempstead and the R. W. S. Corporation for half damages each, and they appeal. Decree modified.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Norman M. Barron, both of New York City, of counsel), for the Hempstead and Red Star Towing & Transportation Co.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for appellant R. W. S. Corporation.

William F. Purdy, of New York City, for appellee Schoonmaker-Conners Co., Inc.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The libelant, owner of the scow Capt. George B. Gage, sued to recover damages sustained by her in November, 1913, while off Marshall Field's dock at Lloyds' Neck, L. I. The owner filed this libel against the charterer, and it impleaded Paul J. Exner & Son, Inc., purchaser of the scow's cargo of gravel from the petitioner, and the R. W. S. Corporation, the consignee of the gravel; also the Red Star Towing & Transportation Company and the steam tug Hempstead, which towed the scow to Lloyds' Neck. The libel was sustained for half damages against each appellant.

The Hempstead proceeded with the Gage in tow to the vicinity of this dock and awaited high tide. It was necessary for the tug to take her tow in on the peak of the tide, as there was only 7 feet of water at the dock and the scow drew 9½ feet. She was loaded with gravel. There is proof that it was customary to put the scow as near the dock as the tug could get her, leaving her to be lightened, if necessary, and hauled in the rest of the way by the consignee. The bottom is of soft mud, with no rocks or bars and a gradual slope to the channel. It appears that seldom were tugs able to berth scows alongside the dock. No inquiry was made from the representatives of the Gage at the time as to the depth of the water, and it does not appear that the contract was to place the scow alongside the dock.

The tow reached Huntington Bay Friday morning, November 2d, and waited for the tide to rise in order to bring the scow up as near the dock as it could. After maneuvering to berth the scow, a line was put out to the scow from a motor truck on the dock, under directions of the employees of the R. W. S. Corporation, who were to receive the cargo, and the truck hauled the scow up as far as possible. Thereupon the tug was informed that it was all right to leave, which it did. At the time the tug left, the scow seemed to be in good condition and was not leaking. On Saturday, November 3d, the motor truck made attempts to pull the scow to the dock, and on Sunday, under direction of the foreman of the R. W. S. Corporation, further attempts were made to haul the scow in by the use of a jackscrew. On Monday, November 5th, when the tide came in, she filled with water. The scow captain first noticed water in her on Sunday night at about 6 o'clock. On Tuesday, November 6th, the R. W. S. Corporation employed another scow, the Gilli-

gan, to lighten the Gage. She rested on the bow of the Gage, and both vessels sustained damages. On November 7th, after the Gage was lightened, holes were bored into her sides, and she was pumped out and on the flood tide brought up alongside the dock.

[1-3] The Hempstead did all that could reasonably be required of her when she left the scow in as safe a berth as the conditions permitted. The scow's destination was as near Marshall Field's dock as the Hempstead could take her, which was where the tug left her. The evidence supports this contention. There is a conflict as to the distance she was left from the dock, varying from 4 to 15 feet. The distance was bridged by planks. The towage contract was between the New York Tidewater Gravel Corporation and the tug boat company. It did not constitute negligence or improper towage to place the scow where she would lie on bottom when the tide was ebb, for it is an even and soft mud bottom, free from rocks or bars. It was not the tug's fault that the scow drawing this depth of water could not land nearer to the dock. The consignee, as well as the charterer of the scow, must be chargeable with knowledge if these conditions made impossible the task of tying her up alongside. If there was a risk in allowing the barge to remain in the position she was in when the tug departed, it was not the tug's. The W. H. Baldwin (C. C. A.) 271 F. 411; The Milton, 235 F. 287, 149 C. C. A. 3; Jova Brick Works v. City of New York (C. C. A.) 277 F. 180. The tug's duty was to take her as near to the dock as she safely could. There was no obligation to stand by. N. Y. & N. J. Transportation Co. v. Cornell Steamboat Co., 180 F. 107, 103 C. C. A. 605.

[4] There is sufficient explanation of the cause of the injury to the scow in the efforts made by the R. W. S. Corporation in attempting to haul her alongside by using the motor truck and the jackscrew. As consignee, it may be held for negligence in attempting to thus land her alongside. Look et al. v. Portsmouth, etc., Ry. (D. C.) 141 F. 182; C. F. Harms Co. v. Upper Hudson Stone Co. (D. C.) 225 F. 634, affd. 234 F. 859, 148 C. C. A. 457. This use of the motor truck in attempting to haul her on Friday and Saturday, and again with a jackscrew subsequently, sufficiently explains the cause of leaking.

The decree will be modified, by holding the R. W. S. Corporation solely at fault.

Decree modified.