## THE BRONX.

(District Court, E. D. New York. June 21, 1926.)

No. 6776.

1. **Towage** ⊗⟞4—Tug, while not common carrier or insurer, owes duty of reasonable skill, care, and diligence while tow is in its possession, and not yet taken to point agreed on.

Tug and owner, while not common carriers or insurers, owe duty to exercise reasonable skill, care, and diligence while tow is in their possession, and agreed towage is uncompleted.

2. **Towage** ⊗⟞15(2).

Owner of tow has burden of showing damages to tow were caused by tug, its owner, agents, or servants.

3. **Towage** ⊗⟞11(10)—Protection to tow at stakeboat, as by presence of tug, should have been provided on several hours' notice of approach of northeaster.

While leaving tow, on fair afternoon, at stakeboat, off Riker's Island, East River, awaiting necessary change of tide, was not negligence, some protection to the boats there, as by presence of tug, should have been provided, with notice of approach of northeaster for five hours, when it broke in force.

4. **Towage** ⊗⟞11(10).

Tug, which, on returning to stakeboat, where it had left tow midway of trip, found the boats adrift in gale, was in fault in not standing by and rendering assistance after one unsuccessful effort; they shortly thereafter drifting from mud flat to rocky beach.

5. **Towage** ⊗⟞11(10).

Parting of lines, whereby tow left by tug at stakeboat broke away in gale, was not due to inevitable accident, there having been several hours' warning before wind reached its height, in which tug could have come to boat's assistance, and prevented damage.

6. **Towage** ⊗⟞12(1).

Proximate cause of damage to one of boats of tow, which broke away from stakeboat in gale and drifted on rocky beach, *held* not her failure to put out anchor, she being unable to do so because of way tow was made up, but failure of tug to stand by and render assistance.

In Admiralty. Libel by the Empire Brick & Supply Company against the steam tug Bronx; the Red Star Towing & Transportation Company, claimant. Decree for libelant.

Alexander & Ash, of New York City, for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for claimant.

CAMPBELL, District Judge. On October 20, 1923, the Red Star Towing & Transportation Company received an order from the libelant, Empire Brick & Supply Company, to transfer its scow Empire Brick No. 14, light, from Flushing creek to Cornell stakeboat, which was at anchor in the North River, off Weehawken, N. J. There was a conflict in the testimony, but I find the facts to be as follows:

Between 12 o'clock noon and 1 o'clock p. m. on October 22, 1923, the steam tug Bronx, owned by the claimant and respondent Red Star Towing & Transportation Company, came down Flushing creek with four light barges in tow on a hawser, arranged in two

tiers of two barges each. When she reached the Empire No. 14, she picked up the latter, making her fast close up under the stern of the George S., the port boat of the second tier of barges which she had in tow.

She proceeded with her tow, including Empire No. 14, to the stakeboat No. 2 of the respondent Red Star Towing & Transportation Company, and anchored in the anchorage grounds off Riker's Island, East River, where, about 3:30 o'clock p. m., she left her tow, including the Empire No. 14, securely made fast outside of two other barges at the stakeboat, but there was no line from the Empire No. 14 to the stakeboat. At that time the tide was ebb, wind light, and weather fair and clear; but it was not safe to attempt to take the Empire No. 14 through, except on the ebb tide, and the tide had not a sufficient time yet to run.

The Bronx then proceeded, light, to New York. Early in the evening of October 22, 1923, the two inside barges were removed from the stakeboat. Before the two scows were pulled out, the Marion had put out a line across them to the stakeboat, and after they were pulled out she put out other lines.

The Marion had been towed stern first. The first line she put out to the stakeboat was a corner line, and she made fast to another boat. When that boat was pulled out, the Marion made fast to the stakeboat with other lines.

Between 5 and 6 o'clock p. m. the wind was blowing 15 to 20 miles an hour, and steadily increased, as is usual with northeast gales. At about 11 p. m. it began to blow very hard and at about 3 o'clock the next morning, when the gale was blowing 50 to 60 miles an hour, the Marion's lines parted, and the flotilla went adrift.

The Marion's lines were good lines, the ones she generally used, and her captain had inspected them about 11 p. m. The flotilla drifted over toward the flats at Riker's Island.

The steam tug Bronx had returned from New York to the stakeboat, and found the tow adrift, and went after it, and tried to get a line on the tow, but did not succeed, as she drew too much water, and the tow fetched up on the flats at Riker's Island, the bottom being mud and ashes. The Bronx then went away and left the tow.

After awhile the wind seemed to change, and the tow drifted off the Riker's Island flats, and over to North Beach, where the Empire No. 14 fetched up on the beach, in which there were rocks, which caused damage to the Empire No. 14. The Empire No. 14 was provided with a proper anchor, but her captain said he was unable to make use of it, as he was made fast to the George S.

[1] From the facts as found it appears that the contract made by the Red Star Towing & Transportation Company with the libelant was to tow the Empire No. 14 to the Cornell stakeboat off Weehawken, and while neither the steam tug Bronx nor her owner, the Red Star Towing & Transportation Company, were common carriers or insurers of the boat, they owed the duty to the libelant to tow the boat to the point agreed upon, and it was their duty to exercise reasonable skill, care, and diligence while the Empire No. 14 was in their possession and the service contracted for remained unperformed. Doherty v. Pennsylvania R. Co. (C. C. A.) 269 F. 959.

[2] The libelant rests under the burden of showing that the damage complained of, done to the Empire No. 14, was occasioned by the negligence of the Bronx and respondent, its agents or servants. The Junior (C. C. A.) 279 F. 407; Schoonmaker Conners Co. v. Lambert Transp. Co. (C. C. A.) 268 F. 102; C. F. Harms Co. v. Upper Hudson Stone Co., 234 F. 859, 148 C. C. A. 457.

[3] Stakeboat No. 2, owned by the claimant, was a reasonably safe place to land a boat in good weather, and the Bronx and respondent were not negligent in landing the Empire No. 14 at the stakeboat in the afternoon; but the stakeboat was a place exposed to the force of a northeast gale, and with all signs so well understood by the captain of the stakeboat, and as they must have been by mariners generally, it would seem to me that with notice of the approaching gale, from 6 o'clock p. m. to 11 o'clock p. m., when it broke in force, some protection to the boats at the stakeboat should have been provided. Bouchard Transp. Co. v. Pennsylvania R. Co. (C. C. A.) 6 F.(2d) 362; Empire Brick & Supply Co. v. Hines (D. C.) 300 F. 683.

It may well be that, by the time the wind was blowing a gale, which was considered dangerous, the boats could not safely have been moved; but, when the boats broke adrift, if a tug had been there to render assistance, the tow would have been prevented from going on the rocks.

[4] Aside from all this, however, we find that, when the boats had broken adrift, the Bronx, which had brought them to the stakeboat, returned, and found them adrift, made one effort to aid them, and, when not successful, left them as they went on the Riker's Island flats; whereas, had she remained but a few minutes, she would have been able to save the boats of the tow from any further

damage by preventing them from going on North Beach.

The service of the tug and respondent had not ended when the Empire No. 14 was placed at the stakeboat, and the failure of the Bronx to stand by and render assistance after one unsuccessful effort, in my opinion, was a fault on the part of the Bronx. Bouchard Transp. Co. v. Pennsylvania R. Co., supra.

That the Cornell stakeboat would not receive boats at night, and that it was unsafe to go through Hell Gate on the ebb tide, seems to have been established by the evidence, and therefore it was not negligence simply to interrupt the voyage by placing the Empire No. 14 at the stakeboat; but the duty to care for the boat while at the stakeboat, as hereinbefore shown, still rested on the Bronx and claimant respondent.

[5] The claim that the parting of the lines was due to inevitable accident was not, in my opinion, sustained, because the wind did not rise suddenly, with but little warning, but, on the contrary, continued to rise gradually for several hours before it reached its height, and, if proper attention had been given to those warnings, one of the claimant respondent's tugs, which were at College Point, could have gone to the assistance of the boats at the stakeboat, and the damages suffered by the Empire No. 14 could have been prevented, either by moving the boats or by placing them on separate lines to the stakeboat. The Anna C. Minch (C. C. A.) 271 F. 192; The Surf (D. C.) 132 F. 880.

[6] The claimant contends that the proximate cause of the damage was the failure of the Empire No. 14 to put out her anchor, but in my opinion that was not the proximate cause, because I do not think the Empire No. 14 could have made the proper use of her anchor, the way the tow was made up (The Sunnyside, 251 F. 271, 163 C. C. A. 427); but in my opinion the proximate cause was the failure of the steam tug Bronx to stand by, even but a few minutes, when it failed to put a line on the tow before it grounded on Riker's Island flats, which it would have been able to do after the tow swung around and was drifting to North Beach.

I am convinced that the bottom on which the Empire No. 14 pounded at North Beach was rocky, and that the damages which the Empire No. 14 sustained were occasioned thereby. The libelant was without fault, and the Bronx and respondent were solely to blame.

A decree may be entered in favor of the libelant, with costs, and with the usual order of reference.