20 F.2d 357 (1927)
THE EASTCHESTER.
PLYMOUTH TRANSP. CO., Inc.,
v.
RED STAR TOWING & TRANSPORTATION CO. et al.
No. 291.
Circuit Court of Appeals, Second Circuit.
June 6, 1927.
Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and J. Dudley Eggleston, both of New York City, of counsel), for the Eastchester.
Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for libelant appellee.
Foley & Martin, of New York City (W. J. Martin, of New York City, of counsel), for impleaded appellee.
Before MANTON and SWAN, Circuit Judges, and CAMPBELL, District Judge.
SWAN, Circuit Judge.
The libel was filed by the owner of the coal barge Emergency against the steam tug Eastchester, Red Star Towing & Transportation Company, claimant, and the latter impleaded Stephens Fuel Company, Inc.
*358 The tug took the barge in tow at Ninety-Sixth street, East River, early in the morning of February 20, 1924, bound for the yard of the Stephens Fuel Company in West Farms Creek, pursuant to a towage order received from Stephens Fuel Company. They reached their destination about 9 or 10 o'clock a. m. The tide was running flood, wind north-east, of gale velocity, and the weather very stormy. There was a light boat lying at Stephens wharf, so that there was no room to dock the Emergency there without moving the light boat. Consequently the tug proceeded to Bell & Kilcullens wharf (known as the brickyard dock), which is adjacent on the north to Stephens dock. Witnesses for the Eastchester testified that they were in the habit of leaving barges consigned to Stephens tied up at the brickyard dock when the Stephens berth was occupied, and that on this occasion, Murray, Jr., assistant yard superintendent of the Stephens Company, handled one of the Emergency's lines and assisted in tying her up at the brickyard, and said he was satisfied to have her left there. The Emergency was made fast by bow and stern lines, with her port side toward the dock. After landing her, the tug took in tow the light boat from Stephens dock and departed.
Along both the Stephens dock and the brickyard dock there is a bar extending out some 2 or 3 feet from the dock, and at the north end of the brickyard dock it extends out some 10 or 12 feet. Outside these bars the bottom is level. At low tide loaded vessels take the ground, and it is necessary for their safety that they keep outside the 3-foot bar and keep south of the wider bar at the north. The master and mate of the tug testified that they warned the barge captain of the bank, and that he would have to keep breasted off as the tide ebbed. He denied this conversation.
About 1 p. m., the foreman of the Stephens yard came to the brickyard dock and warned the barge captain that he "better push off." It was found that the boat was already hard aground. Her bow rested on the wide ridge at the north end, and her stern on the narrow ridge nearer the dock. When the tide rose the barge filled with water and, hung up as she was at both ends, she suffered strains which are the basis for this libel. Damages being stipulated, a final decree was entered for the libelant against the tug, and the petition impleading Stephens Fuel Company was dismissed. No opinion was written.
The charge against the tug is negligent mooring of the barge in an unsafe berth. This charge the tug seeks to avoid by showing delivery to the consignee and acceptance by him at a berth with the condition of which he was thoroughly familiar. It was a safe berth at the time the barge was moored. It would become unsafe as the tide fell, unless the barge were kept clear of the ridges along the dock and at the north end. The tug's witnesses say they warned the barge captain of these dangers, but he denied it. However that may be, since the berth was safe when the barge was delivered to the consignee (if it was so delivered  a question shortly to be discussed), the duty of avoiding dangers which would arise several hours later, on the falling of the tide, should rest upon the consignee or upon the bargee. The tug having fulfilled her towage contract by delivering the barge to the consignee, without objection to the berth by consignee or by bargee, the risk in allowing the barge to remain in the position she was in when the tug departed was not the tug's. Schoonmaker-Conners Co. v. N. Y. Tidewater Gravel Co., 11 F.(2d) 470 (C. C. A. 2); The Milton, 235 F. 287 (C. C. A. 2).
The master and the mate of the tug testified that it was their usual practice to deliver boats consigned to the Stephens yard at the brickyard dock when the Stephens dock was occupied; that Stephens had a winch and cable for drawing boats so docked at the brickyard down to its own wharf when it was ready to unload them; and that Mr. Murray, Jr., the assistant superintendent of Stephens, assisted in making fast the stern line of the Emergency and accepted delivery of her at the very place at which she was landed. Murray was present in court and did not take the witness stand. It is a rule based fairly on common sense that a failure to call a witness in such circumstances raises a presumption that he would have given unfavorable testimony if called. The Bolton Castle, 250 F. 403 (C. C. A. 1); The New York, 175 U. S. 187, 204, 20 S. Ct. 67, 44 L. Ed. 126. We deem delivery to and acceptance by Stephens Fuel Company of the barge at the brickyard dock to have been clearly established.
The consignee of a vessel is "bound to provide a safe berth," which phrase has been explained to mean that a consignee must use reasonable care to ascertain the condition of a berth and give notice of any concealed danger to a vessel using it. M. & J. Tracy v. Marks, Lissberger & Son, 283 F. 100 (C. C. A. 2). See, also, Look v. Portsmouth, etc., Ry. (D. C.) 141 F. 182; Barber v. Abendroth Bros., 102 N. Y. 406, 7 N. E. 417, 55 Am. Rep. 821; Neville v. Morrison Coal & Coke Co., 211 App. Div. 282, 207 N. Y. S. 471; Garfield *359 & Proctor Coal Co. v. Rockland, etc., Lime Co., 184 Mass. 60, 67 N. E. 863, 61 L. R. A. 946, 100 Am. St. Rep. 543. Stephens Fuel Company has failed of this duty. Since Mr. Murray assisted in making fast the barge in a berth which he knew would become unsafe as the tide fell unless precautions were taken, the Stephens Fuel Company was in duty bound to shift the boat or to warn the barge captain to breast off. This warning they gave at 1 o'clock, but it was then too late. The Stephens Fuel Company was therefore at fault.
It remains to consider whether the barge captain was also at fault. He did not know these waters, this being his first trip to West Farms Creek. The conflicting testimony as to whether he was warned by the tug to breast off has already been mentioned. He denied the receipt of such warning, and we cannot say positively that he received it. Having been placed in this berth by the tug and the consignee, we think the bargee was justified in assuming the berth to be safe and making no investigation for himself. See Look v. Portsmouth, etc., Ry., supra; Garfield & Proctor Coal Co. v. Rockland, etc., Lime Co., supra.
The decree is reversed, with costs to appellant, and the decree is directed in favor of libelant against the impleaded appellee, Stephens Fuel Company, Inc.