## JAMES H. RHODES & CO. v. UNITED STATES LIGHTERAGE CORPORATION.

### No. 356.

Circuit Court of Appeals, Second Circuit.

Aug. 1, 1938.

Earl Appleman, of New York City, for appellant.

Thomas A. McDonald, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Two libels were tried together below. From an interlocutory decree of the District Court for the Eastern District of New York in one cause, and from a final decree in the other, James H. Rhodes & Company has appealed. One cause of action is that of Christopher Olsen for salvage services rendered in saving part of a cargo of pumice stone and, aside from some rather half-hearted contention that he was not a salvor, the issue was whether the appellant or the appellee was liable for his claim. The other was for damage to the stone when dumped by a lighter on which it was loaded.

It was proved that libellant James H. Rhodes & Company, to be hereafter called Rhodes, had made a contract with the United States Lighterage Corporation, which will now be referred to for convenience as Lighterage, under which it was to lighter pumice stone for Rhodes. In accordance with the requirements of this contract, Lighterage, on April 10, 1937, took a load of such stone belonging to Rhodes from the Steamship "Extavia" at Pier F, Jersey City and carried it to the Rhodes' wharf in Dutch Kills Creek, Long Island City, where the lighter was made fast at about 10:00 p. m. that evening. At about half past two the next morning the lighter dumped her cargo. Some of it was lost and the remainder damaged. After the dumping, Christopher Olsen saved some of the stone and demanded salvage for so doing. He brought his libel against Rhodes to recover for that and Rhodes impleaded Lighterage under the 56th Admiralty Rule, 28 U.S.C.A. following section 723. Rhodes also sued Lighterage to recover the damage to the stone. These were the two causes of action consolidated for trial. The interlocutory decree was in favor of Olsen and against Rhodes while the final decree dismissed the libel of Rhodes against Lighterage.

It was shown that the lighter was not in very good condition in some respects but she had lately been put in sufficient repair to make her seaworthy for the work to which she was put at this time. At least the trial judge found that the dumping of her cargo could not be attributed to unseaworthiness and we agree. The real reason was insufficient water at the wharf on low tide coupled with a bottom so sloping that the loaded lighter could not safely rest upon it. Rhodes knew the condition of the berth but gave Lighterage no warning and was properly held at fault for not providing a safe berth. The Eastchester, 2 Cir., 20 F.2d 357. True enough, the tide fell unusually low on this particular night but there is ample evidence that this berth was unsafe for such a loaded lighter at normal low tide. That made it the duty of the wharfinger to give due notice of that fact to those in charge of the lighter. Morey v. City of New Rochelle, 2 Cir., 254 F. 425.

But the absence of any warning that the berth was unsafe did not entirely relieve the bargee from blame. Unless given definite assurance that the berth was safe he was bound to take reasonable precautions to discover the true condition by taking adequate soundings. Nassau Sand & Gravel Co., Inc., v. Red Star Towing & Transportation Co., Inc., 2 Cir., 62 F.2d 356. Failure to do that was a fault which requires division of the damages.

We do not understand that there is now any disposition on the part of either Rhodes or Lighterage to deny Olsen's right to recover for salvage services and, accordingly, pass that without other comment.

The interlocutory decree is modified to divide the damages and the final decree is reversed with directions to enter a decree for the libellant for half damages.