NEW YORK TRAP ROCK CORPORATION
v. THE METROPOLITAN NO. 4 et al.

No. 245.

Circuit Court of Appeals, Second Circuit.

June 12, 1942.

Jacob I. Goodstein, of New York City (Stanley R. Wright, of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for claimant of the tug, appellee.

Hagen & Eidenbach, of New York City (Henry C. Eidenbach, of New York City, of counsel), for libellant, appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents the question of who is responsible for damages sustained by the libellant's scow "J. P. Callaghan" from resting upon an uneven bottom at the dock of the appellant at New Rochelle, New York. The scow, loaded with a cargo of stone consigned to the appellant, was brought to the dock by a tug of Metropolitan Sand & Gravel Corporation. Because of the presence in the unloading berth of two empty scows and one partly loaded, the Callaghan was not placed in the unloading berth by the tug but was left at the easterly end of the dock, which the tug master "probably knew" was an unsafe berth when the tide fell. Upon directly conflicting testimony the district judge found that the consignee accepted delivery at the place where the scow was moored and delayed too long in moving her to the unloading platform "where the berth probably is safe at low tide." The tug arrived at approximately noon and left, according to her log, with the two light scows, at 12:32 P. M. When the consignee attempted to move the Callaghan at about 1:30 P. M. she was fast aground and could not be stirred until the next high tide, when she was brought to the unloading platform by a line attached to the bucket on the boom of the derrick. As a conclusion of law the court held that it was the consignee's duty to move the Callaghan into a safe berth before the tide fell and failure so to do rendered the Colonial Company solely responsible for the damage resulting from grounding. The tug master and the scow's bargee were exonerated from fault.

A large part of the appellant's brief attacks the court's findings of fact, but it is also contended that on the facts as found the court made erroneous rulings of law.

As to the attack upon the facts little need be said. It is conceded that the findings must stand unless "clearly erroneous." Johnson v. Andrus, 2 Cir., 119 F.2d 287. And where, as here, there is a direct conflict in oral testimony, an appellate court should seldom, if ever, substitute

its judgment for that of the trial judge who saw the witnesses and credited one rather than another. See the Milton, 2 Cir., 235 F. 287, 288. Thus, it is quite futile to urge that we should accept the bargee's story that the scow was aground before he threw his line to the man on the dock, or the testimony of witnesses for the consignee that protests were made to the tug master against leaving her at the place where the district judge found delivery was accepted.

■ Turning to questions of law arising upon the facts as found, the first contention is that the scow's bargee was at fault for failure to take soundings and for failure to breast off when the scow was first made fast. This appears to be an afterthought. The appellant's answer charged no such fault against the libellant; it alleged merely that the scow was in charge of an incompetent person. At the trial it appeared on cross examination that the bargee had not sounded bottom nor slacked off the single line put out to the dock because, according to his story which the court did not accept, the scow was already aground. The general rule that the bargee must take soundings unless he relies upon express assurance that the berth is fair is well established. Nassau Sand & Gravel Co. v. Red Star T. & T. Co., 2 Cir., 62 F.2d 356; Cities Service Transp. Co. v. Gulf Refining Co., 2 Cir., 79 F.2d 521. But we do not think it applicable to the facts at bar. In The Eastchester, 2 Cir., 20 F.2d 357, the bargee was exonerated under similar circumstances, the court saying at page 359: "Having been placed in this berth by the tug and the consignee, we think the bargee was justified in assuming the berth to be safe and making no investigation for himself." This was not overruled, as the appellant argues, by the two cases cited above for the general rule; in neither of them had the consignee accepted delivery at a berth other than that to which the vessel was consigned.

■ The Eastchester, supra, also answers the appellant's contention respecting the fault of the tug, namely, negligently mooring the scow in an unsafe berth. The berth was safe when the scow was moored; it would only become unsafe with the falling tide, and the court accepted the tug master's testimony that the Colonial's plant superintendent agreed to have the scow tied up there temporarily until the tug should remove the two light scows, when the

Colonial's men would pull the Callaghan up to the unloading platform. Having made a delivery which the consignee accepted, the tug was under no duty to stand by and the risk of allowing the scow to remain where she was fell upon the consignee. Schoonmaker-Conners Co. v. New York Tidewater Gravel Corp., 2 Cir., 11 F.2d 470.

Decree affirmed.